**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **CHARLES ALLEN,** *et al.*, ) | **CASE NO.  5:05 CV 00091** |
| ) | |
| **PLAINTIFFS,** ) | **JUDGE PETER C. ECONOMUS** |
| ) | |
| **V.** ) | |
| ) | **MEMORANDUM OPINION AND** |
| **CITY OF MASSILLON,** *et al.*, ) | **ORDER** |
| ) | |
| **DEFENDANTS.** ) | |

This matter is before the Court upon Defendants Richard Pahlau, John Doe Officers (1-20), City of Massillon, Massillon Police Department, Keith Moser, and Richard Siskie's ("Defendants") motion for summary judgment on the issue of qualified immunity. (Dkt. # 10). Also before the Court are Plaintiffs Charles Allen and Betty Allen's ("Plaintiffs") memorandum in opposition, (Dkt. # 11), supplement to memorandum in opposition with exhibits in support, (Dkt. #s 17, 18, 20, 21), and Defendants' reply memoranda. (Dkt. # 13, 23). On June 29, 2006, this matter came before the Court for a hearing in regard to Defendants' motion for summary judgment.

## I.  FACTUAL BACKGROUND

On January 22, 2003, Defendants Keith Moser ("Moser") and Richard Siskie ("Siskie") responded to an alleged domestic violence disturbance at a home located at 306

Sandy, Massillon, Stark County, Ohio ("Residence"). (Dkt. # 1, Compl. ¶ 13; Dkt. # 10). Plaintiff Charles Allen's ("Allen") daughter, Charlene Morrison, ("Morrison") alleged that Allen struck her in the head with a glass bottle. (Dkt. # 10). The Massillon Fire Department Emergency Medical Squad ("EMS") were present at the Residence when Moser and Siskie arrived. (Dkt. #s 10, 13).

The events that follow are in dispute.

According to Plaintiffs, after speaking with Morrison,[1] Siskie "rubbed his hands together and stated, 'Let's get that big boy.'" (Dkt. # 11, Betty Allen Aff. ¶ 3). Siskie stated to Plaintiff Betty Allen ("Betty Allen"), "What I am going to do your husband, I do not want you to see." (Dkt. # 11, Betty Allen Aff. ¶ 3). Allen was placed under arrest. (Dkt. # 11). At the time of his arrest, Allen was sitting on a stool in the kitchen. (Dkt. # 11).

Siskie placed handcuffs on Allen, which caused his wrists to bleed. (Dkt. # 11). He was then ordered by Siskie to walk to a stretcher located at the front door of the residence.[2] (Dkt. # 11). Plaintiffs and Morrison informed the officers that Allen was not able to walk without assistance because of a medical condition. (Dkt. # 11, Charles Allen Aff. ¶ 7, Betty Allen Aff. ¶¶ 3, 6, 7, Charlene Morrison Aff. ¶¶ 5, 6). Siskie responded by calling other

---

[1] Morrison states in her affidavit that she indicated to Siskie and Moser that she did not want her father arrested. (Dkt. # 11, Charlene Morrison Aff. ¶ 3).

[2] The record indicates that the officers placed Allen on a stretcher immediately after his arrest and transported him to the Massillon Community Hospital in order to obtain a medical clearance for jail. (Dkt. # 10, Exhibits B and C).

2

officers to at the scene. (Dkt. # 11). Siskie then "grabbed [Allen] by the shoulder" and "attempted to lead [him] to walk." (Dkt. # 11).

Allen fell to the floor and "Siskie tried to pick up [Allen] by pulling his shirt over his head." (Dkt. # 11). Moser and Siskie each grabbed one of Allen's arms, while Pahlau and another individual grabbed his legs. (Dkt. # 11). The four individuals carried him from the kitchen of the residence to the front door, and rolled Allen onto the stretcher. (Dkt. # 11). An ambulance transported him to the Massillon Community Hospital. (Dkt. # 11).

Defendants' version differs from Plaintiffs' in many respects. After arriving at the Residence, Moser and Siskie placed Allen under arrest for alleged domestic violence based upon statements made by Morrison and Betty Allen. (Dkt. # 10). Moser and Siskie then ordered Allen to walk to the front door. (Dkt. # 10). However, Allen "claimed that he was unable to walk without assistance[] and claimed he needed to use the restroom." (Dkt. # 10). Allen "[took] about four steps, sat down, and refused to cooperate" with the officers. (Dkt. # 10). As a result, the officers, with the help of the paramedics, placed him on a stretcher and removed him from the residence.[3] (Dkt. # 10, Defendants' Exhibit A-1). An ambulance transported Allen to the Massillon Community Hospital for a medical

---

[3] In his affidavit, Captain Donald Smith of the Massillon Fire Department avers that he "assisted in removing Charles Allen from his residence on January 22, 2003" and that he "physically assisted the Massillon Police Department in placing [Allen] on a cot." (Dkt. # 10, Defendants' Exhibit C, Capt. Donald Smith Aff. ¶¶ 3, 6).

3

evaluation. (Dkt. # 10).

On January 19, 2005, Plaintiffs filed a Complaint pursuant to 42 U.S.C. §§ 1983 and 1988, alleging violations of Allen's Fourth, Fifth, and Fourteenth Amendment rights under the United States Constitution. The Complaint names the City of Massillon, the Massillon Police Department, Moser, Siskie, Pahlau, and John Doe Officers 1-20 as defendants.[4] In their answer and motion for summary judgment, Defendants raised the issue of qualified immunity as an affirmative defense. By an Order dated August 24, 2005, the Court stayed discovery "except that limited discovery [could] be conducted where necessary to resolve the issue of qualified immunity."[5] (Dkt. # 9). Moser, Siskie, and Pahlau thereafter filed a motion for summary judgment. (Dkt. # 10). Plaintiffs then filed a memorandum in opposition. (Dkt. # 11).

On January 10, 2006, this Court granted Plaintiffs' motion to continue summary judgment proceedings pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. (Dkt. # 14). After being granted leave of Court, Plaintiffs filed a supplement to their opposition to Defendants' motion for summary judgment. (Dkt. # 17). Defendants then filed a reply. (Dkt. # 23). On June 29, 2006, this matter came before the Court for an oral argument on

---

[4] However, no service has been perfected against defendants John Doe officers 1-20, nor have they been identified. Accordingly, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, John Doe officers 1-20 are **DISMISSED** as defendants.

[5] Once a defendant raises the defense of qualified immunity, "[o]n summary judgment, the judge appropriately may determine...the currently applicable law....Until this threshold immunity question is resolved, discovery should not be allowed." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

4

the pending motion for summary judgment based on the issue of qualified immunity.

## II. STANDARD OF REVIEW

Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56 (c). "Rule 56 (c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In considering such a motion, the court must review all of the evidence in the record. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); accord Graham-Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 556-57 n.7 (6th Cir. 2000). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

"A party seeking summary judgment always bears the initial responsibility of

informing the court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (quoting FED. R. CIV. P. 56 (c)). The movant meets this burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Clayton v. Meijer, Inc., 281 F.3d 605, 609 (6th Cir. 2002) (quoting Celotex, 477 U.S. at 324-25). The non-movant then "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

"The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Anderson, 477 U.S. at 250). "A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 250.

### III.   LAW

#### Qualified Immunity

When officials are sued in their individual capacities pursuant to section 1983, they may be protected from liability for damages if their alleged wrongful conduct was committed while they performed a function protected by qualified immunity. See Cagle v.

6

Gilley, 957 F.2d 1347, 1348 (6th Cir.1992).  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation."  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  The privilege is an "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  Id.  Consequently, qualified immunity questions must be resolved at the earliest possible stage in litigation.  See Saucier v. Katz, 533 U.S. 194 (2001).

Government officials are generally entitled to qualified immunity when performing discretionary functions as long as the conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1981).  In order to assert a violation of a "clearly established" right and defeat a qualified immunity defense, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  In other words, "in the light of pre-existing law the unlawfulness must be apparent."  Id.  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).

Consequently, the Court utilizes a three-step test in determining whether qualified immunity applies:  (1) whether, "based upon the applicable law, the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred;" (2) "whether the violation involved a clearly established constitutional right of which a

7

reasonable person would have known;" and (3) "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." Feathers v. Aey, 319 F.3d 843, 848 (6th Cir. 2003); see also Barnes v. Wright, 449 F.3d 709 (6th Cir. 2006); Sample v. Bailey, 409 F.3d 689, 695 (6th Cir. 2005); Champion v. Outlook Nashville, Inc., 380 F.3d 893, 901 (6th Cir. 2004). "If the answer to all three questions is 'yes,' qualified immunity is not proper." Id.

Individual claims of immunity must be analyzed on a fact-specific, case-by-case basis to determine whether the constitutional rights were so clearly established when the alleged misconduct was committed that any official in the defendant's position would understand that what they were doing violates those rights. See Anderson, 483 U.S. 635, 640 (1987).

It is the province of the jury, not the court, to decide any factual disputes. However, the court ultimately decides the question of whether "any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct." Adams v. Metiva, 31 F.3d 375, 387 (1994).

### IV. ANALYSIS

The section 1983 claims in the case *sub judice* arise from the following constitutional rights: (1) the individual officers' alleged use of excessive force in violation of Allen's Fourth Amendment rights, as secured by the Fourteenth Amendment, and (2) the denial of

8

Allen's right to medical care under the Fourteenth Amendment following his arrest.

In their motion for summary judgment, Defendants contend that Officers Moser, Siskie, and Pahlau are entitled to qualified immunity because the officers did not use excessive force upon Allen in effecting his arrest.  As to Allen's Fourteenth Amendment right to medical care, Defendants invoke qualified immunity because Allen did not demonstrate the existence of a sufficiently serious medical need.

### A.    Fourth Amendment

The first step in any qualified immunity analysis is to determine whether the facts, viewed in the light most favorable to Plaintiffs, show that a constitutional violation could be found.  See Feathers, 319 F.3d at 848 (6th Cir. 2003).  This Court has held that individuals have a right under the Fourth Amendment to be free of excessive force when police make an arrest or seizure.  See  Lyons v. City of Xenia, 417 F.3d 565, 575 (6th Cir.2005) (citing Graham v. Connor, 490 U.S. 386, 394-95 (1989)). It is also well-established that "[t]he Fourth Amendment [] prohibits unduly tight handcuffing in the course of an arrest." Lyons, 417 F.3d at 575 (citing Martin v. Heideman, 106 F.3d 1308, 1313 (6th Cir.1997); Walton v. City of Southfield, 995 F.2d 1331, 1342 (6th Cir.1993)).

Furthermore, "[a]ll claims that law enforcement officers have used excessive force–deadly or not–in the course of an arrest . . . of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Graham, 490 U.S. at 395 (1989). "In making this evaluation, courts look at '(1) the severity of the crime at issue, (2)

9

whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." Id. As the Supreme Court stated in Graham:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split second judgments–in circumstances that are tense, uncertain, and rapidly evolving– about the amount of force that is necessary in a particular situation.

490 U.S. at 396-97.

In the instant case, Plaintiffs concede that Allen had committed a crime of domestic violence against Morrison.[6]

Defendants' argue that Allen was a threat because he "had committed a violent crime, was obviously a danger to his family in that they called the police for assistance, and [Allen] intentionally resisted arrest by refusing to comply with the officers directives." (Dkt. # 10). According to the Plaintiffs, however, Allen was attempting to cooperate with the officers when he fell to the floor. (Dkt. # 11, Charles Allen Aff. ¶ 13, Betty Allen Aff. ¶ 13, Charlene Morrison Aff. ¶ 12).

In his affidavit, Allen states that "[a]fter I was arrested, Officer Siskie, with Officer

---

[6] It is undisputed that Siskie arrested Charles Allen for alleged domestic violence. (Dkt. # 11). It is also undisputed that Charles Allen was "seized" under the Fourth Amendment as he was under arrest when these events took place. See Graham, 490 U.S. at 395; see also Brower v. County of Inyo, 489 U.S. 593 (1989)(a Fourth Amendment seizure occurs when there is a governmental termination of freedom of movement through means intentionally applied).

10

Moser present, ordered me to walk through my home to a stretcher that was located at the front door to the home.  At that time, paramedics were at the home and the paramedics had the stretcher at the front door for me."  (Dkt. # 11, Charles Allen Aff. ¶ 5).  Plaintiffs requested that the handcuffs be removed so that Allen could use his walker. (Dkt. # 11). However, it is alleged, "Siskie proceeded to tighten [Allen's] handcuffs."  (Dkt. # 11; Charles Allen Aff. ¶ 4; Betty Allen Aff. ¶ 4).  Allen avers that his wrists began to bleed once Siskie placed the handcuffs on him.  Furthermore, Allen states that he requested the handcuffs be removed so that he could use his walker.  (Dkt. # 11; Charles Allen Aff. ¶ 6). Although it is uncontroverted that the officers did not remove the handcuffs, there is a dispute as to whether Allen suffered a physical injury from the handcuffing.[7]

Plaintiffs further allege that, although the stretcher provided by the paramedics "could have easily been brought in to the kitchen," the officers "decided to pick up [Allen] by all fours and drag him across the floor."  (Dkt. # 11).  Defendants, on the other hand, state that Allen "[took] about four steps, sat down, and refused to cooperate" with the officers. (Dkt. # 10).  They assert that this forced the officers "in conjunction with the EMS squad, [to] place[] the plaintiff on a stretcher and remove[] him from the residence."  (Dkt. # 10).  Plaintiffs contend that the officers "forcibly dragged [Allen] across the floor."  (Dkt.

---

[7]  Dr. Robert Erickson of Spectrum Orthopaedics opined that the actions of the officers were the proximate cause of Allen's injuries, which included "contusion[s] of the forearms."  (Dkt. # 11).  However, Allen did not make any complaints at the scene to the paramedics nor did he complain to the Emergency Room physician at Massillon Community Hospital. (Dkt. # 10, Exhibits B, C-1).

11

# 1, Compl. ¶ 15).

Therefore, viewing the facts in a light most favorable to Plaintiffs, this Court concludes that although some force was needed in dealing with Allen due to his size,[8] a genuine issue of material fact exists as to whether the officers' actions violated Allen's Fourth Amendment right to be free from excessive force during an arrest. See Solomon v. Auburn Hills Police Dept., 389 F.3d 167, 173 (6th Cir.2004). This does not end our analysis, however.

After establishing a potential violation of Allen's constitutional rights, the second step in the qualified immunity analysis is to determine whether that right was clearly established. See Feathers, 319 F.3d at 848. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Sample, 409 F.3d at 698 (quoting Anderson, 483 U.S. at 640). "In inquiring whether a constitutional right is clearly established, we must look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits." Id. (quoting Walton v. City of Southfield, 995 F.2d 1331, 1336 (6th Cir.1993)).

The Court finds that Allen's constitutional right to be free from excessive force was clearly established at the time of his arrest. The Supreme Court has held that the right to

---

[8] Plaintiffs state in their memorandum that "[a]t that time, [Allen] weighed approximately 370 pounds." (Dkt. # 11).

be free from excessive force is a clearly established right under the Fourth Amendment which can give rise to a claim pursuant to 42 U.S.C. § 1983.  See Tennessee v. Garner, 471 U.S. 1 (1985).  Likewise, the Sixth Circuit has consistently followed this holding.  See Neague v. Cynkar, 258 F.3d 504, 507 ("the right to be free from excessive force is a clearly established Fourth Amendment right"); Adams, 31 F.3d at 386-87 (the right "to be free from the use of excessive force under the Fourth Amendment . . . [is] clearly established.")(internal citations omitted); Dickerson v. McClellan, 101 F.3d 115, 1162-63 (6th Cir.1996).

Finally, in completing the qualified immunity analysis, the Court must determine whether the Plaintiffs have offered sufficient evidence to indicate that what the officers allegedly did was objectively unreasonable in light of the clearly established constitutional right.  See  Feathers, 319 F.3d at 848.  In the instant matter, the Court finds that Plaintiffs have produced sufficient evidence to overcome summary judgment.  Further, because of the contested facts surrounding Allen's arrest, a question exists as to whether the officers actions were objectively unreasonable.  See Dickerson, 101 F.3d at 1158 ("Summary judgment is not appropriate if there is a genuine factual dispute relating to whether [defendant] committed acts that allegedly violated clearly established rights.").

Accordingly, the Court holds that the events surrounding Allen's handcuffing and transfer to the ambulance create a genuine issue of material fact as to whether the officers used excessive force during Allen's arrest.  Thus, Moser, Siskie, and Pahlau are not entitled

to qualified immunity with regard to Plaintiffs' Fourth Amendment claim.

### B.     Fourteenth Amendment

Plaintiffs contend that the individual Massillon Police officers violated their to duty to assess and provide proper medical care to Allen during his arrest and detainment.  As above, the initial inquiry in the qualified immunity analysis is whether a constitutional right was violated.  See Estate of Carter v. City of Detroit, 408 F.3d 305, 311 (6th Cir.2005).

The Due Process Clause of the Fourteenth Amendment prevents state actors from denying life, liberty, or property without due process of law.  See DeShaney v. Winnebago Co. Dep't of Social Services, 489 U.S. 189, 195 (1989); see also Kallstrom v. City of Columbus, 136 F.3d 1055, 1065 (6th Cir.1998).  Moreover, in section 1983 claims, the Sixth Circuit has held that the Fourteenth Amendment affords pre-trial detainees the right to "adequate medical treatment."  Watkins v. City of Battle Creek, 273 F.3d 682, 685 (6th Cir.2001); see also Estate of Carter, 408 F.3d at 311.

To succeed on such a claim, the plaintiff must demonstrate that the defendant acted with "deliberate indifference to the serious medical needs" of the pre-trial detainee. Watkins, 273 F.3d at 686 (quoting Estelle v. Gamble, 429 U.S. 97 (1976).  More than mere negligence, "[d]eliberate indifference requires that the defendants knew of and disregarded a substantial risk of serious harm to [the plaintiff's] health and safety."  Watkins, 273 F.3d at 686 (6th Cir. 2001). Deliberate indifference may be shown by proving both an objective component, (1) "the existence of a 'sufficiently serious' medical need" on behalf of the

plaintiff; and a subjective component, (2) "a sufficiently culpable state of mind in denying medical care" on the part of the defendant. Blackmore v. Kalamazoo County, 390 F.3d 890, 895 (6th Cir.2004)(quoting Farmer v. Brennan, 511 U.S. 825, 834).

As to the first prong in proving deliberate indifference, the record does not reveal that Allen suffered from a sufficiently serious medical need. The Sixth Circuit has adopted an "obviousness" approach in determining what constitutes a serious medical need:

> Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem [whereas] delay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute a [constitutional] violation.

Blackmore, 390 F.3d at 897 (citations omitted).

The Court must engage in artful speculation in attempting to define the contours of Plaintiffs' Fourteenth Amendment claim. Plaintiffs suggest that Allen's "serious medical need" was his inability to walk without assistance. Specifically, Plaintiffs allege:

> Mr. Allen, Mrs. Allen and Ms. Morrison told Officers Siskie and Moser that Mr. Allen was not able to walk without his walker. The walker was visible and in plain sight of everyone. Mr. Allen was unable to use the walker because his hands were cuffed. The officers refused to take the handcuffs off.
>
> Officers Siskie and Moser [were advised] of Mr. Allen's serious medical condition that he was not able to walk without the walker because of his recent prostate surgery and recent stroke. Because of his condition, Mr. Allen fell regularly because he would lose control of his legs. Officers Siskie and Moser were also told Mr. Allen was under medication for his prostate condition, as well as for high blood pressure and pain killers.

15

(Dkt. # 11).

These facts, if proven, do not rise to the level of a serious medical need. In the cases relied upon by Plaintiffs, the officials in question were deliberately indifferent to each plaintiff's obvious serious medical need. As a result, the subsequent delay in providing medical treatment in each of these cases caused the plaintiff to sustain severe injuries, some leading to the death of the plaintiff.

Here, it is uncontroverted that the officers dealt with Allen's need for assistance by enlisting the aid of the paramedics on the scene and transferring Allen from the kitchen to a stretcher. Allen was then immediately placed in the care of the paramedics who transported the plaintiff to the emergency room. Allen did not exhibit any obvious signs of pain or injury. Moreover, the officers provided Allen with medical care within thirty minutes from the time the officers entered the Residence and executed Allen's arrest to the time Allen was transported to the emergency room. (Dkt. # 11). Based on such facts, Plaintiffs have not shown that any delay on the part of the officers caused Allen to suffer harm. See Blackmore, 390 F.3d at 897 "[t]he seriousness of a [detainee's] medical needs 'may also be decided by the effect of delay in treatment.'"(citations omitted) (emphasis removed).

Plaintiffs have alleged that Allen sustained a fractured left fibula, a drop foot of his left foot, and that he has no feeling on the bottom of his left foot. (Dkt. # 11). In his notes from Allen's February 12, 2003 office visit, Dr. Robert C. Erickson, II, opined that

16

"[b]ecause of the brisk way [Allen] was treated by the officers, he received contusion of the forearms, shoulder sprains, fracture of the left leg and paralysis of the left peroneal nerve with residual drop foot." (Dkt. # 11, Exhibit D).[9]  Indeed, the lone inference to be drawn from Plaintiffs' facts is that the injuries suffered by Allen are attributable to the officers' alleged use of excessive force in transferring Allen from the kitchen to the stretcher rather than to any alleged denial of medical care.

Assuming, *arguendo*, Plaintiffs fulfilled the objective prong in proving deliberate indifference, the second question is whether Plaintiffs have shown that the officers possessed a "sufficiently culpable state of mind in denying medical care" to Allen.  It is insufficient for Plaintiffs to demonstrate that a substantial risk of serious harm to Allen existed.  Rather, the officers must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and they must also have drawn that inference.  Blackmore, 390 F.3d 890, 895 (6th Cir.2004) (quoting Farmer, 511 U.S. 825, 834).  "If an officer failed to act in the face of an obvious risk of which he should have known but did not, the officer has not violated the . . . Fourteenth Amendment[]." Estate of Carter, 408 F.3d at 312 (citations omitted).

Plaintiffs' Complaint and memorandum in opposition lack any facts in support of the

---

[9]  However, the emergency room records from Massillon Community Hospital, dated January 22, 2003 reveal that, directly following the incident, Allen was able to "ambulate to the bathroom with assistance and with a walker" and that Allen "does walk under his own power with the use of a walker." (Dkt. # 10, Exhibit B).  The emergency room physician diagnosed Allen with only a "mild case of bronchitis."  (Dkt. # 10, Exhibit B).

17

contention that the officers failed to provide medical care to Allen. Furthermore, the record does not reveal that the individual officers violated the Massillon Police Department's policies or procedures such that Allen's alleged injuries could have been prevented. The policy and procedure of the Massillon Police Department instructs officers to "defer to the medical judgment of the paramedics" in assessing the medical needs of pre-trial detainees. (Dkt. # 17; Dkt. # 18, Deposition of Mark Weldon at 12-13, Deposition of Siskie at 12). Plaintiffs' chief complaint is that the paramedics and officers did not bring the stretcher to Allen, but instead carried Allen from the kitchen to the stretcher, which was located at the front door.

Based on the alleged facts, there is no indication that Allen's medical need was sufficiently serious, nor that the individual officers realized that a serious medical need existed and nonetheless ignored it. Rather, the officers' training and the departmental policies and procedures of the Massillon Police Department indicate that the officers behaved in a reasonable fashion in enlisting the help of the paramedics present at the time of the incident. Thus, no constitutional violation occurred.

Having found no constitutional violation, the Court need not inquire into the second and third steps of the qualified immunity analysis. Consequently, as to Plaintiffs' claims under 42 U.S.C. § 1983 arising from the alleged violation of Allen's Fourteenth Amendment rights, judgment is awarded to Defendants.

**V.     CONCLUSION**

For the foregoing reasons, the Court hereby orders that Defendants' Motion for Summary Judgment (Dkt. # 10) is **GRANTED IN PART and DENIED IN PART.** Judgment is **GRANTED** in favor of Defendants Keith Moser, Richard Siskie, and Richard Pahlau on Plaintiffs' claims brought pursuant to 42 U.S.C. § 1983 arising from violations of Allen's Fourteenth Amendment rights. The motion is **DENIED** with regard to the Plaintiffs' claim brought pursuant to 42 U.S.C. § 1983 arising from violations of the Fourth Amendment. Finally, all claims made against the unnamed defendants are **DISMISSED**.

**IT IS SO ORDERED.**

/s/ *Peter C. Economus* – **August 10, 2006**
**PETER C. ECONOMUS**
**UNITED STATES DISTRICT JUDGE**